**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| VERNA HARRIS, ) | CASE NO. 1:11-cv-2785 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | **MEMORANDUM OPINION AND** |
| Defendant. ) | **ORDER** |

Plaintiff, Verna Harris ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying her applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("the Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

**I. PROCEDURAL HISTORY**

On April 10, 2009, Plaintiff filed applications for a POD, DIB, and SSI and alleged

a disability onset date of March 26, 2009. (Tr. 8.) The applications were denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 8.) On June 8, 2011, ALJ Thomas M. Randazzo held Plaintiff's hearing. (Tr. 8.) Plaintiff appeared, was represented by counsel, and testified. (Tr. 8.) A vocational expert ("VE") also appeared and testified. (Tr. 8.)

ALJ Randazzo observed that Plaintiff previously filed an application for a POD and DIB on September 29, 2006. (Tr. 8; *see* Tr. 71.) The prior application was denied initially, upon reconsideration, and by ALJ Dennis James LeBlanc after a hearing held on March 11, 2009. (Tr. 8.) ALJ LeBlanc found that Plaintiff had the residual functional capacity ("RFC") to perform light work except that she was limited to no more than occasional pushing and pulling, climbing, use of ladders, use of ropes, use of scaffolds, stooping, and crawling; was limited to frequent reaching and handling; and needed to avoid exposure to sunlight. (Tr. 69.) ALJ LeBlanc concluded that Plaintiff could perform her past relevant work as a deli worker (Tr. 72), and the Appeals Council declined to review ALJ LeBlanc's decision (Tr. 8).[1]

ALJ Randazzo found that ALJ LeBlanc's RFC determination controlled the disposition of the present applications because there was no new or material evidence, or a showing of "changed circumstances," pursuant to *[Drummond v. Commissioner of Social Security](), 126 F.3d 837 (6th Cir. 1997)*. (*See* Tr. 8, 15-16.) Accordingly, on

---

[1] Plaintiff states that her appeal of the Commissioner's final decision on the prior application is presently under judicial review, with a case number 1:11-cv-057. The case number to which Plaintiff cites, however, is not for any case involving Plaintiff or a challenge to a final decision of the Commissioner on any application for Social Security disability benefits.

September 1, 2011, ALJ Randazzo found Plaintiff able to perform her past relevant work as a deli worker and, therefore, not disabled. (Tr. 16.) On October 26, 2011, the Appeals Council declined to review ALJ Randazzo's decision, so ALJ Randazzo's decision became the Commissioner's final decision. (Tr. 1.)

On December 27, 2011, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) On May 29, 2012, Plaintiff filed her Brief on the Merits. (Doc. No. 17.) On July 13, 2012, the Commissioner filed his Brief on the Merits. (Doc. No. 18.) Plaintiff did not file a reply brief.

Plaintiff asserts three assignments of error: (1) ALJ Randazzo failed to find that Plaintiff's anxiety and depression were "severe" impairments at the second step of his analysis; (2) ALJ Randazzo improperly adopted the RFC from Plaintiff's prior application; and (3) ALJ Randazzo failed to fully and fairly develop the record by requesting updated medical records, ordering a consultative examination, or calling upon a medical expert at Plaintiff's hearing.

## II.   EVIDENCE

### A.   Personal and Vocational Evidence

Plaintiff was 56 years old on the date of her hearing. (*See* Tr. 434) She had a GED; and she started, but never completed, college or vocational training. (Tr. 28.) She had been certified as a nursing assistant, but her certification expired "years ago." (Tr. 28.) She had past relevant work experience as a deli worker and machine operator/packer. (Tr. 16, 74, 428.)

### B.   Medical Evidence

3

Plaintiff explains that the prior hearing decision was issued on March 30, 2009 (*see* Tr. 62-75), stands as the final decision of the Commissioner, is currently under judicial review and, therefore, the medical evidence relevant to the disposition of this case is that subsequent to March 30, 2009.[2]  (*See* Pl.'s Br. 3-4.)

On June 11, 2009, state agency reviewing psychologist Vicki Casterline, Ph.D., performed a Psychiatric Review Technique and indicated the following.  (Tr. 329-41.) Dr. Casterline assessed Plaintiff under Listing 12.06 regarding anxiety-related disorders and determined Plaintiff was only mildly limited in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace; and that Plaintiff exhibited no episodes of decompensation of extended duration.  (Tr. 329, 339.)  In sum, Dr. Casterline found Plaintiff's mental impairment was not severe.  (Tr. 329, 341.)

On August 18, 2009, Plaintiff presented to Dr. Dariush Saghafi, M.D., for a consultative physical examination upon referral from the Bureau of Disability Determination.  (Tr. 343-45.)  Dr. Saghafi indicated the following upon reviewing all accompanying paperwork and reports and speaking with Plaintiff.  Plaintiff's chief complaint was low back pain; however, Plaintiff also complained of pain in her arms and legs, as well as numbness in her leg that was independent of the position of her leg.  (Tr. 343.)  Plaintiff's back pain began in 2002; "[s]urgery helped for a short time"; and Plaintiff had attempted to return to work as a machine operator lifting up to 10 pounds.  (Tr. 343.)  Sitting, standing, and walking caused Plaintiff pain; and Plaintiff

---

[2] On March 23, 2009, Plaintiff presented to the Nord Center for counseling, and the licensed social worker who attended to Plaintiff indicated that Plaintiff reported she "feels doing better since being back on Paxil" and "feels she is getting good relief for her symptoms of depression."  (Tr. 284.)

could sit for only 10 to 15 minutes at a time. (Tr. 343.) Plaintiff described her pain as chronic and "like knives sticking in [her] back." (Tr. 343.) Plaintiff was able to shower, dress, eat, use the restroom, drive a car, and go shopping (with difficulty); and her husband helped her with household chores. (Tr. 343.)

Dr. Saghafi further indicated the following upon physical examination. Plaintiff presented with "a hunched posture while walking," but she was able to perform toe and heel walking. (Tr. 345.) Further, she exhibited full range of motion and strength in her extremities; she was able to straighten her back and walk upon command (with "slight" pain); and she had a "good stride without the presence of shuffling, festination, turning difficulties, or predisposition to falls." (Tr. 345.) Dr. Saghafi concluded as follows:

> The patient suffers from lupus erythematosus, morbid obesity, and lumbago. She is s/p L4/5 fusion. The patient is able to lift, push, and pull normally to perform ADL's but on a continuous basis she must stay below 10 lbs. The patient is qualified for seated type work with periodic rest periods where she may stand or change position. The patient is able to bend, walk, and stand up to 10-15 minutes at a time. The patient is able to understand the environment as well as peers and communicate satisfactorily. The claimant is able to travel independently.

(Tr. 345.)

On September 18, 2009, state agency reviewing physician Maria Congbalay, M.D., assessed Plaintiff's physical RFC as follows. (Tr. 351-57.) Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; and sit, stand, and walk for about 6 hours in an 8-hour work day with normal breaks. (Tr. 352.) Her abilities to push and pull were unlimited except to the extent to which she was limited in her abilities to lift and carry. (Tr. 352.) She could never climb ladders, ropes or scaffolds; and she could occasionally climb ramps and stairs, stoop, and crouch. (Tr. 353.) She

5

had no manipulative, visual, communicative, or environmental limitations.  (Tr. 354-55.) Dr. Congbalay based her findings in part on Dr. Saghafi's examination; however, she found Dr. Saghafi's conclusion that Plaintiff "is qualified for seated type work with periodic rest periods where she can stand or change position and bend, walk, stand 10-15 mins at a time is not totally consistent with [Dr. Saghafi's] findings" because, during Dr. Saghafi's examination, Plaintiff had exhibited full range of motion and strength in her extremities and was able to walk with a normal gait.  (Tr. 356-57.)

On January 23, 2010, state agency reviewing psychologist Bonnie Katz, Ph.D., affirmed Dr. Casterline's June 11, 2009, findings.  (Tr. 359.)

On March 2, 2010, state agency reviewing physician Eli Perencevich, D.O., affirmed Dr. Congbalay's September 18, 2009, findings.  (Tr. 360.)

On September 23, 2010, Plaintiff presented to the Nord Center upon self-referral and complained that she was "under a lot of stress," was "a nervous wreck," and had "problems with sleeping and eating."  (Tr. 361.)  Licensed social worker Julie Temple attended to Plaintiff at intake and indicated that Plaintiff reported the following.  Plaintiff "has always been someone who worries."  (Tr. 361.)  Her symptoms began in 2006 and worsened in August 2010.  (Tr. 361.)  She worried about "everything," and her life was "so miserable" that she wished she could "just go ahead and die."  (Tr. 361.)  She first sought treatment at the Nord Center in 2007, but her file was closed in January 2010 "due to non-compliance."  (Tr. 361.)  She had not undergone prior psychiatric hospitalization.  (Tr. 361.)  Ms. Temple diagnosed Plaintiff with generalized anxiety disorder, depressive disorder not otherwise specified, and cannabis dependence; and

6

she assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 57.[3] (Tr. 368.)

Plaintiff continued with counseling at the Nord Center through 2011. (*See* Tr. 371-404.) Throughout that time, Plaintiff continued to be assigned a GAF score of 57, although advanced practice registered nurse Nancy Danielson indicated that Plaintiff was diagnosed with dysthemic disorder rather than a depressive disorder not otherwise specified. (Tr. 401.)

**C. Hearing Testimony**

**1. Plaintiff's Hearing Testimony**

Plaintiff testified at her hearing as follows. Plaintiff suffered severe fibromyalgia, obesity, back pain, depression, and anxiety. (Tr. 418.) She lived with her husband and son. (*See* Tr. 413.) On weekends, she and her son took care of her granddaughter, who was three and one-half years old. (*See* Tr. 413.) She usually watched television with her granddaughter or read to her. (Tr. 415.) Sometimes she took her granddaughter outside, and she sat while she played with her. (Tr. 416.) Plaintiff was able to do "some" cooking and cleaning, watch television, and occasionally play games on her computer. (Tr. 414.) She was primarily responsible in her home for cooking and cleaning; her husband did dishes only "now and then." (Tr. 417.)

Plaintiff's back had become worse since her last hearing. (Tr. 416.) It hurt "all

---

[3] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. rev., 2000).

the time," including when she sat or stood. (Tr. 416.) Sitting, standing, and walking made her pain worse. (Tr. 421.) Lying down helped alleviate her back pain, but when she lied down, the pain traveled into her legs. (Tr. 416, 421.) Drawing her legs up into the fetal position helped alleviate her leg pain. (Tr. 421.) The only medication she took for her pain was Ibuprofen. (*See* Tr. 416.) She could sit, stand, and walk for only five to ten minutes at a time. (Tr. 421.) She had to lie down "at least 10 times a day," and she had to lie down for 30 minutes before she could rise and resume her daily routine. (Tr. 422.)

"Mental issues" also prevented her from working. (Tr. 417.) She was not able to concentrate or "think straight" (Tr. 417), and she had no motivation or energy (Tr. 419). She had trouble sleeping "at least four times a week" because there were "things on [her] mind" that kept her awake. (Tr. 420.) She had anxiety when her husband "gets to yelling and screaming" and when she expected a bill to come in the mail and she knew she did not have the money to pay it. (Tr. 420.) However, her anxiety had improved since she started taking Paxil. (Tr. 420.) She obtained treatment at the Nord Center with a counselor and a nurse practitioner, instead of a doctor, because the doctors were overbooked. (Tr. 423-24.)

### 2.  Vocational Expert's Hearing Testimony

ALJ Randazzo posed the following hypothetical to the VE:

> Assum[e] somebody of the claimant's age, education, and work experience . . . [who] has a residual functional capacity to perform light work, except that the claimant is limited to no more than occasional pushing and pulling, climbing, use of ladders, use of ropes, use of scaffolds, stooping, crawling, and no more than frequent reaching and handling. Claimant is also to avoid

8

    exposure to sunlight.[4]

(Tr. 430.) The VE testified that such a person could perform Plaintiff's past relevant work, as well as perform other work as visual inspector (for which there were 3,000 jobs in northeast Ohio, 15,000 jobs in Ohio, and 300,000 jobs in the nation), cleaner/ housekeeper (for which there were 2,500 jobs in northeast Ohio, 12,000 jobs in Ohio, and 1 million jobs in the nation), and mail clerk (for which there were 1,400 jobs in northeast Ohio, 7,000 jobs in Ohio, and 139,000 jobs in the nation). (Tr. 430-31.)

    ALJ Randazzo asked the VE whether such a person could still perform the jobs to which the VE testified if she additionally were limited to simple, routine, or repetitive tasks. (Tr. 431-32.) The VE responded that such a person could still perform the jobs to which she testified. (Tr. 432.)

    ALJ Randazzo then asked whether the hypothetical person could perform any work if she were limited to sedentary work. (Tr. 432.) The VE responded that such a person would not be able to perform Plaintiff's past relevant work, and that Plaintiff would qualify as "disabled" under the Medical Vocational Rules. (*See* Tr. 432.)

    Finally, ALJ Randazzo asked the VE whether any of his hypothetical people would be able to work if they missed four or more days of work a week because of pain and other symptoms. (Tr. 434.) The VE responded that such a person would not be able to sustain full-time work. (Tr. 434.)

    Plaintiff's attorney asked whether any of the hypothetical people would be able to work if they were "away from the work station for 20 percent of the time." (Tr. 434.)

---

[4] ALJ Randazzo noted that this hypothetical is ALJ LeBlanc's RFC from the prior decision. (Tr. 430.)

9

The VE responded that such a person would be unable to sustain full-time work. (Tr. 434.)

### III.  STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and*

10

416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

ALJ Randazzo made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.

2. The claimant has not engaged in substantial gainful activity since March 26, 2009, the alleged onset date.

3. The claimant has the following severe impairments: systemic lupus erythematosus, fibromyalgia, obesity, degenerative disc disease[,] and status post-back surgery.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work . . . except that the claimant is limited to no more than occasional pushing/pulling, climbing, the use of ladders, ropes, or scaffolds, stooping[,] and crawling. She is limited to no more than frequent reaching and handling and must avoid exposure to sunlight.

6. The claimant is capable of performing past relevant work as a deli worker. The vocational expert testified that this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 26, 2009, through the date of this decision.

11

(Tr. 10-16.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. The ALJ's Assessment of Severe Impairments

12

Plaintiff contends that ALJ Randazzo should have found that her anxiety and depression were severe impairments at step two of his assessment because the record shows that Plaintiff received counseling at the Nord Center in 2009;[5] she was diagnosed with anxiety and depression; and she was assigned a GAF score of 57, which indicates moderate impairment.  For the following reasons, this assignment of error is not well taken.

At step two of the disability determination analysis, a claimant must show that she suffers from a severe medically determinable physical or mental impairment or combination of impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Castrovinci v. Astrue*, No. 1:10-cv-2650, 2012 WL 928736, at *3 (N.D. Ohio Mar. 19, 2012).  Plaintiff's counselor and nurse practitioner at the Nord Center diagnosed Plaintiff with depression; however, only an "acceptable medical source" may establish that a claimant suffers a medically determinable impairment, and Plaintiff's counselor and nurse practitioner do not qualify as "acceptable medical sources" under the Social Security Regulations.  *See* S.S. R. 06-03p, 2006 WL 2329939, at *2 (S.S.A.).  As Plaintiff has not presented an adequate basis to conclude her depression is a medically determinable impairment, ALJ Randazzo did not err at step two.

In any case, the mere fact that Plaintiff was diagnosed with anxiety and depression does not indicated how those impairments limited Plaintiff.  *See, e.g.*, *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."); *Foster v. Bowen*, 853 F.2d 483, 489

---

[5] The records to which Plaintiff cites are dated from March 2009 through October 2010.

(6th Cir. 1988) ("The mere fact that plaintiff suffered from a dysthymic disorder . . . does not automatically entitle plaintiff to the receipt of benefits.  Rather, in order to qualify for the receipt of benefits . . . plaintiff must show that she was disabled by her dysthymic disorder.").  And a GAF score, alone, is not dispositive of an individual's functional abilities, particularly when substantial evidence show that the claimant functions at a level greater than the GAF score suggests.  *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir.2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir.2006) ("If other substantial evidence (such as the extent of the claimant's daily activities) supports the conclusion that [a claimant] is not disabled, the court may not disturb the denial of benefits to a claimant whose GAF score is as low as [the claimant's] or even lower.").

ALJ Randazzo considered Plaintiff's anxiety to be a medically determinable impairment, but he explained that it was not "severe" because the evidence showed: the anxiety was attributed to various financial or social stressors; it only mildly limited Plaintiff; and it was controlled with medication.  (Tr. 12.)  Plaintiff has not taken issue with the adequacy of the evidence upon which ALJ Randazzo relied to conclude Plaintiff's anxiety was not severe; and the evidence reasonably supports ALJ Randazzo's determination.  Accordingly, this assignment of error is not well taken.

**C.    The ALJ's RFC Assessment**

Plaintiff contends that the ALJ improperly gave controlling weight to ALJ LeBlanc's RFC determination regarding Plaintiff's prior application for disability benefits

because Dr. Saghafi's examination of Plaintiff constituted new and material evidence showing Plaintiff's condition changed.  For the following reasons, this assignment of error is not well taken.

Absent substantial evidence of "changed circumstances" such as a change in the claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ.  *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842-43 (6th Cir. 1997).  Although ALJ LeBlanc found Plaintiff limited to light work and able to perform her past work as a deli worker, Plaintiff contends that "Dr. Saghafi's evaluation and findings . . . prove that [Plaintiff] no longer retains the capacity for light exertion or her past work as a deli worker and is actually restricted to sedentary work."[6]  (Pl.'s Br. 8.)  However, ALJ Randazzo gave little weight to Dr. Saghafi's opinion because it was inconsistent with the other medical evidence and with Dr. Saghafi's observations and objective findings upon physical examination.  (Tr. 15.)  For example, Plaintiff reported an ability to perform a range of activities of daily living that included caring for herself, driving a car, and going grocery shopping; she had full range of motion and full strength in her extremities; and although Plaintiff presented hunched over as she walked, she could

---

[6] The regulations define sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

15

walk upright on command with little pain, good stride, and a stable gait.  (Tr. 15.)

ALJ Randazzo ultimately relied on the record as a whole to determine that Plaintiff's condition had not changed since ALJ LeBlanc rendered his decision, including a lack of evidence of treatment records related to Plaintiff's lupus and fibromyalgia; Plaintiff's lack of compliance with what treatment she received; Plaintiff's subjective complaints, activities of daily living, and credibility; and Dr. Congbalay's and Dr. Perencevich's opinions.  (Tr. 14-15.)

Plaintiff has not taken issue with the adequacy of the evidence upon which the ALJ relied; rather, Plaintiff suggests that ALJ Randazzo was required to give Dr. Saghafi's opinion controlling weight because there were no conflicting medical opinions from a treating source and, as an examining physician, Dr. Saghafi's opinion was entitled to greater weight than the non-examining, state agency reviewing physicians. However, Dr. Saghafi was not a treating physician, so his opinion was not entitled to the deference afforded an treating physician.  Additionally, the opinions of examining sources are not automatically entitled to more weight than the opinions of non-examining sources.  See *Blakley v. Comm'r of Soc. Sec.*, 581, F.3d 399, 409 (6th Cir. 2009).  The opinions of state agency medical consultants regarding the nature and severity of an individual's impairments constitute expert opinion evidence upon which an ALJ may rely.  See S.S.R. 96-6p, 1996 WL 374180, at *1 (S.S.A.).  ALJ Randazzo's reasons for rejecting Dr. Saghafi's opinion of Plaintiff's limitations are reasonably supported by the record; and the record as a whole reasonably supports ALJ Randazzo's conclusion that there was no new or material evidence or a showing of changed circumstances.  Accordingly, this assignment of error is not well taken.

16

### D. The ALJ's Duty to Fully and Fairly Develop the Record

Plaintiff contends that the ALJ improperly failed to obtain an updated medical source opinion of Plaintiff's mental functioning that accounted for Plaintiff's treatment at the Nord Center since 2009.  Plaintiff cites *Deskin v. Commissioner of Social Security, 605 F. Supp. 2d 908 (N.D. Ohio 2008)*, in support.[7]  However, RFC is for the ALJ to determine and *Deskin* "is not representative of the law established by the legislature, and [as] interpreted by the Sixth Circuit Court of Appeals." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (Nugent, J.).

Although the ALJ has a duty to ensure that a reasonable record has been developed, *see Johnson v. Sec'y of Health & Human Servs., 794 F.2d 1106, 1111 (6th Cir. 1986)*, it is incumbent upon the claimant to provide an adequate record upon which the ALJ can make an informed decision regarding the claimant's disability status, *see Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 214 (6th Cir. 1986)*. Further, an ALJ is not required to refer a claimant for a consultative examination unless the record establishes that such an examination "is *necessary* to enable the administrative law judge to make the disability decision." *Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 214 (6th Cir. 1986)* (quoting *Turner v. Califano, 563 F.2d 669, 671 (5th Cir. 1977)*).  And it is within the ALJ's discretion whether to consult an ME

---

[7] The court in *Deskin* stated that "where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Deskin v. Comm'r of Soc. Sec., 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)*.

17

at a claimant's hearing.  See 20 C.F.R. § 404.1529(b).

Here, Plaintiff has not shown that it was necessary for ALJ Randazzo to obtain a consultative examination of Plaintiff's mental functioning before rendering his decision, or that ALJ Randazzo abused his discretion in declining to call on a medical expert. Indeed, the Nord Center records do not establish that Plaintiff suffered depression because the diagnoses of depression were not made by an acceptable medical source; and the record evidence, including Plaintiff's testimony, reasonably support the conclusion that Plaintiff's anxiety only mildly limited Plaintiff and was under control with medication.  Accordingly, this assignment of error is not well taken.

## VI.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date:  August 23, 2012